Litigants Who Deserve the Patience Award, Autotech Collision v. Village of Rockville Center. Terrible, terrible. May it please the court, Mindy Callas for the plaintiff's appellants. We're appealing, obviously, from an order dismissing a three count complaint. But I really want to get cut to the chase and just explain to you that at the heart of this appeal is the plaintiff's request to reverse the district court order, and specifically, plaintiffs would like an opportunity to file an amended complaint. Did you ask for an amended complaint? We didn't specifically ask for an amended complaint. Speaking to the microphone piece, I'm sorry. Yeah, we didn't ask for an amended complaint at the time. We decided to try to stand on our complaint as it was. My problem is that from the beginning to the end, you and your client have made every possible procedural mistake that could be made. And this is the last one that you didn't ask for an amended, right to amend. A decision was made not to ask for an amended complaint, but I don't think that bars the court from allowing- But it suggested it didn't err in not granting it. Well, this was a situation where the district court repeatedly stated that she didn't like the plaintiff's claims and wanted them withdrawn. So she was not interested in our filing an amendment. You don't know that until you ask and present the district court with a proposed amended complaint. But okay, let's let you continue with your argument. Okay, but with respect to our argument and the case law, this court and all of the courts virtually in the Eastern District of New York have found that the usual practice upon granting a motion to dismiss is to allow the plaintiff leave to amend even when no motion for leave to amend has been granted. There are cases like that over and over. In fact, it's happened to me a number of times in connection with other cases where I would have Justice Seibert say, well, fix this complaint, file an amended complaint. And whatever the plaintiff's lawyers did in this case, there's still no reason for her to lose this opportunity. Do we even know now what additional facts could be alleged or are proposed to be alleged in- Well, yes, we know what they are. I mean, for example, the original complaint, which I didn't draft, didn't contain a list of comparators to the plaintiff who's in the towing and auto body business. Some comparators were identified, but they were found not to be adequate. No, no, no, that's not, no, no, that's not the case. The comparators were, they weren't, so there were not- You argued that you adequately pleaded comparators by referencing prior lawsuits. Right, I did that for the purpose of this appeal, because- Yes, but now you're saying, well, that wasn't good enough, so now we want to- No, no, no, no, no, no, I didn't argue comparators in the district court. I only did so in order to frame what a proposed amended complaint would look like. And while I recognize this was the firm that the plaintiff's retained was a small firm. And attorneys kept coming in and out. And some of the mistakes were really a result of that small firm practice that she didn't have the ability to control. And so after the dismissal, which in this case was absolutely final, there was no discussion of futility of any kind of proposed complaint. After that happened, I could sit down and say, this is what we need to do in order to try to persuade the Court of Appeals that you do have at least one last opportunity to file an amended complaint. And that's really why we're here today, that's the crux of the matter. And yes, in the best of all possible worlds, the complaint would have been more artfully drawn. And the motion for leave to amend would have been formally made. But that doesn't bar you, under the case law in this circuit, from reaching, reviewing the complaint, reviewing our arguments, and finding that she has at least one last opportunity for leave. So deal with our decision in Gallop v Cheney, where we said while leave to amend is freely granted, no court can be said to have erred in failing to grant a request that was not made. I think in this case, in the context of this particular case, there was not only a decision that was prepared that the district court reached, but also other rulings that the district court made. For example, just as an example, this was a district court who didn't like this plaintiff. Several years before, she told the plaintiff's lawyers in that case to withdraw. Are you arguing that it would have been futile to ask this district court to amend the complaint? Because that, if you can make out that argument, that is different from what we have held, which is no district court should be, is in error when it denies an amendment that hasn't been sought. But then you have to get to the point of futility, which is much more than a judge who is sick and tired. I think that the record shows of your client, but that's not the same as futility. Well, I would argue that there's an aspect of futility in that. I mean- The only problem is you didn't argue it in your brief. I did. Where? Futility? I mean, I don't have the page right now. It's two pages in your brief that you argue the failure to not grant leave to amend 21 and 22. I don't see you charging the district court that it would have been futile. No, I do. You know, it may be in a footnote where I list a lot of things that happened in the case. I'll find a- You know that our rules do not require us to consider arguments made in footnotes. But okay, let's let you finish. Okay, so I just wanted to give you a brief history of the parties, of the plaintiffs in particular. Lorraine Pillitz is the auto body repair and towing maven, and three of her incorporated entities. She's been the solitary female in this business on Long Island. She moved from Baldwin to Rockville Center in the late 90s, and that's when most of her troubles began with Rockville Center. I would say there are a list of misdeeds which are listed both in our opening brief and in our reply brief, including Rockville Center officials working with GEICO to generate false complaints, which led to a 2010 arrest premised on business fraud, which eventually she was exonerated from. But this is a very disputatious relationship. And she's the David in the village of Rockville Center's legal life, and she's trying very hard to get herself understood. Her 2014 complaint was really a continuation, and also a continuation of earlier complaints involving disputes between Rockville Center. And Ms. Pillitz and her incorporated entities. And I just, this is really, the reason that the Rockville Center complaint is as important as it is, is that's where everything began to sour for her business. And that's why I'm here today. And then finally, most of the arguments raised by the defendants in their responsive brief really have little merit, but especially the argument that somehow the earlier claims between the parties somehow confers sort of a negative light on this last 2014 complaint, it's ridiculous. Each of those complaints were, first of all, they were brought for different reasons. And they were decided for different reasons. There was a 2007 complaint before Judge Wexler, which led to a 2009 settlement. In that case, she also alleged sex discrimination, and she ultimately settled for an amount that she thought was reasonable. But ultimately, the settlement blew open, and she was forced to file a 2011 federal complaint seeking enforcement of the settlement agreement. That was before the same district court as is in this case. And the district court said, I don't want to hear your case in federal court, bring it to state court. And then unfortunately, as one of the judges on this panel just said, yes, there were many errors made. But I don't think she should be brought a case in federal court, which was essentially a case of breach of contract. So the federal court said, maybe politely, maybe not. But if this is essentially a breach of contract case, and there is no diversity in jurisdiction, shouldn't this be in state court? So that's perfectly sensible. So she then goes to state court, but doesn't do things right in state court. So that's- I'm not apologizing for mistakes made. I mean, I only recently came to this case, and what I'm trying to do is to preserve her claim. And with respect to the settlements agreement, I mean, it's well established. Settlements agreements that relate to underlying federal claims can be brought in federal court. The federal court retains jurisdiction. I think it's the Kekkonen line of cases. Depends on how the judgment is concluded, or how the settlement reads. But go ahead. But this settlement specifically reads, it tried to be all encompassing, that it would include both the, it would include, she could pursue an enforcement action in either federal court or state court. And then, let's see, and then finally, as far as the statute of limitations argument. In this case, the district court was correct. There's a question of fact. It's not clear from the complaint itself whether it's timely, but we know that it's timely. The claims accrued according to the defendants on October 1st, 2011. But that's not our argument. The October 1st, 2011 date was a date that there was an effective date for the village's towing contract, and that towing contract was with someone else, another party. She did not learn about the results of the bidding process until well beyond October 1st, 2011, and therefore, her claims are timely. I know you want to reserve some time for rebuttal, so let's hear from the village. Good afternoon. Carol O'Sullivan for defendant, defendant appellees. I want to address the appellant's argument concerning the leave to amend the complaint. Appellant did not move in the lower court. Therefore, this court cannot find that there would be an abuse of discretion for the lower courts not addressing any amendments of that complaint. And in her moving papers, the appellant cites to the standard that an amendment can be made. A proposed amended complaint, however, should not be futile. And, excuse me, the appellant cites to a Davis versus Nassau County case, which cites to this court's decision in Van Buskirk versus New York Times. However, no facts were put forth to show that an amendment would not be futile until the appellant's reply papers. And upon review of these facts, it would show that any amendment would be futile. Because what it had stated, that there are other tower companies that were owned by males, which that has been set forth. However, there's no saying that they are these male-owned towing companies or the towing company that got the bidding contract was similarly situated to the plaintiff being a female-owned company. Therefore, that fact doesn't provide the plausible support to give a minimal inference of discriminatory motivation, which has been held previously on an equal protection claim in the Second Circuit. Aren't they telling us now that they would come in and say that there is a comparable person who got the contract, who is no better than we are, and is male? Isn't that what they are saying they would move to amend to do if we could let them amend this long after? Yes, however, they're not providing the facts to show that it wouldn't be futile. They're not showing that they have those facts that's going to make it a plausible. At the level of saying we would like to be allowed, if this were timely, if they had come in and say we would like to come in and amend the complaint to allege that there is a comparator, or however you pronounce it, who is similarly situated and who is male. Isn't that enough so that under our relatively free procedure for allowing amendments, a district court would, in the ordinary course, be expected, maybe even required, to grant that amendment? And then, if the amended complaint, the amendment, failed to live up to that, then to dismiss the case on 12B6. But at the level of asking, may I amend, isn't it enough to say I've got data which would support that? I think that they have to provide what those minimal facts would be to the court in order to get- When you ask for permission to amend, that's even before you put in the amendment. I haven't seen, we know about plausible since Iqbal and so on, but I haven't seen it go back one step further to say, I would like to make an amendment and I will bring you in things which are plausible. Do I have to tell you, show you now that they're plausible? I don't know. I'm not sure that that's relevant here, but they haven't. I would argue that they would, because they would have to show that it's not going to be a futile amendment that they are making. And that becomes what has been previously held that the amendment cannot be futile. Of course, you could be making a different argument which says, whatever might have been appropriate at the time for asking, if you are now out of time asking us to say, we want you to be allowed to make an amendment, that at that point you have to show more than you would just when you're asking for an amendment in a timely fashion. You see my point, that it may be that the requirements for what you need to bring in when you're asking for an amendment in a timely fashion are very low. But we might have properly higher requirements when somebody says, despite the fact that you made no request for an amendment, now, after you're saying, hey, come back and give us another chance, that at that point we may have the right to ask for more. I would agree with you, since we are in the case where we are, where the motion to amend was not made. The motion to dismiss was decided, and judicial resources were obviously expended in deciding the motion to dismiss. And we are now here on the appeal. Additional facts that they have put forward in the reply papers is the same argument that the appellant has a federally protected rights, where the lower court held that the towing contract was not a federal right. And with respect to the stigma, excuse me, that would be in the substantive due process claim. And within this stigma plus claim, the reply papers, the facts are, again, that there's a protectable interest. However, the court had held that wasn't a protectable federal interest that is so fundamental, similar to the White Plains towing versus Patterson matter, in which it would be towing referrals, where we refer to this rotational list that was prior to the contract. Also with respect to the stigma plus claim, she mentions a loss of business with respect to statements that are made. And it has been previously held that this loss of business is something that would flow from these alleged defamatory statements that she uses in her stigma plus claim. Therefore, that would be a defamation claim, which would be a tort claim, and not a federally protected claim. There's no plus of the loss of a liberty interest where there is a loss of business. With respect to the substantive claims in the complaint that is at issue, with respect to the equal protection claims, there's no, excuse me, the appellant cannot satisfy the plausibility standard. And then in Little John versus City of New York and Vega versus Hempstead Union Free School District, which analyzed the Iqbal standard in a Title VII context, which is how it is done with respect, which is the analysis for an equal protection clause. The Little John court held that they need only give plausible support to a minimal inference of discriminatory motivation. And that was not in the complaint, nor was the proposed amendment in the reply papers. Does that provide a minimal inference of discriminatory motivation when you're only saying, it is because I am a female, which really is identification of the protected class. I touched on the substantive due process and the stigma plus with respect to the no, excuse me, no federally protected interest. Therefore, I don't have anything else unless the court has questions. Thank you.  Ms. Kastenband, you saved some time for rebuttal. Just briefly, I referred to the futility argument in footnote two of my opening brief. And again, the claim that we really want to be able to bring one last amended complaint in order to comply with the elements that are even in the district court's decision. I also want to point out that the district court decision actually refers to the original 2014 complaint as an amended complaint. And actually, if you read the decision, it actually reads like a decision dismissing an amended complaint. So, just a point, as a point of reference, page 255 of the joint appendix actually says, amend a complaint in the dismissal order, which is the subject of this appeal. So that's, unless you have any other questions. Thank you. Thank you very much, and thank you for being patient. It's a long calendar today. We're going to take the case under advisement. We stand adjourned. I want to stand adjourned.